UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONTAE LARRAIL MCFADDEN, | No.  2:22-cv-1234 AC P |
| Plaintiff, | |
| v. | ORDER |
| SAM WONG, | |
| Defendant. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c) and Local Rule 305(a).  ECF Nos. 51, 52.  The case proceeds on a single claim against defendant Wong for deliberate indifference to plaintiff's serious medical need.  ECF No. 7.  Defendant's motion for summary judgment (ECF No. 35) is now before the court, and plaintiff has filed an opposition (ECF No. 45).

I.    Plaintiff's Allegations

The complaint alleges that in February 2021, after suffering from increasing pain in his right knee, plaintiff became unable to bear weight on his right leg.  ECF No. 1 at 3.  Between February and May 2021, plaintiff was seen by defendant on several occasions for his knee pain, at which time defendant accused plaintiff of faking his condition and refused to provide medical care despite plaintiff's clearly worsening condition.  Id. at 3-4.  On May 3, 2021, plaintiff

1    requested emergency medical help and other medical staff sent him to an outside hospital, where

2    he had surgery the following day.  Id. at 4.  Upon returning to the prison, defendant took away the

3    medications and mobility devices that plaintiff had been prescribed.  Id. at 5.

4    II.    Motion for Summary Judgment

5    A.    Defendants' Arguments

6    Defendant argues that he is entitled to summary judgment because he provided plaintiff

7    with appropriate treatment for his knee and was therefore not deliberately indifferent to plaintiff's

8    serious medical need.  ECF No. 35-1 at 16-20.  Alternatively, he argues that he is entitled to

9    qualified immunity.  Id. at 20-21.

10    B.    Plaintiff's Response

11    "Pro se litigants must follow the same rules of procedure that govern other litigants."

12    King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

13    Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

14    established that district courts are to "construe liberally motion papers and pleadings filed by *pro*

15    *se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611

16    F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel

17    "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes

18    upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

19    Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

20    internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of

21    "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation

22    omitted).

23    Accordingly, though plaintiff has largely complied with the rules of procedure, the court

24    will consider the record before it in its entirety.  However, only those assertions in the opposition

25    which have evidentiary support in the record will be considered.  Plaintiff argues that defendant

26    was deliberately indifferent because he failed to provide plaintiff with proper treatment and that

27    there are material disputes of fact that preclude summary judgment in defendant's favor.  ECF

28    No. 45 at 1-6, 9-14.  He further argues that defendant is not entitled to qualified immunity.  Id. at

1  6-8.

2       III.    <u>Legal Standards for Summary Judgment</u>

3          Summary judgment is appropriate when the moving party "shows that there is no genuine

4  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

5  Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden

6  of proving the absence of a genuine issue of material fact." <u>In re Oracle Corp. Sec. Litig.</u>, 627

7  F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The

8  moving party may accomplish this by "citing to particular parts of materials in the record,

9  including depositions, documents, electronically stored information, affidavits or declarations,

10  stipulations (including those made for purposes of the motion only), admissions, interrogatory

11  answers, or other materials" or by showing that such materials "do not establish the absence or

12  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

13  support the fact." Fed. R. Civ. P. 56(c)(1).

14          "Where the non-moving party bears the burden of proof at trial, the moving party need

15  only prove that there is an absence of evidence to support the non-moving party's case." <u>Oracle</u>

16  <u>Corp.</u>, 627 F.3d at 387 (citing <u>Celotex</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56(c)(1)(B).

17  Indeed, summary judgment should be entered, "after adequate time for discovery and upon

18  motion, against a party who fails to make a showing sufficient to establish the existence of an

19  element essential to that party's case, and on which that party will bear the burden of proof at

20  trial." <u>Celotex</u>, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element

21  of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323. In such

22  a circumstance, summary judgment should "be granted so long as whatever is before the district

23  court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

24  56(c), is satisfied." <u>Id.</u>

25          If the moving party meets its initial responsibility, the burden then shifts to the opposing

26  party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec.</u>

27  <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). In attempting to establish the

28  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

1  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

2  admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

3  Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

4  fact "that might affect the outcome of the suit under the governing law," and that the dispute is

5  genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

6  party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

7        In the endeavor to establish the existence of a factual dispute, the opposing party need not

8  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

9  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

10  trial."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

11  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the

12  "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

13  whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal

14  quotation marks omitted).

15       "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

16  court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls

17  v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the

18  opposing party's obligation to produce a factual predicate from which the inference may be

19  drawn.  See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

20  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

21  some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

22  omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

23  non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

24  U.S. at 289).

25       Defendants simultaneously served plaintiff with notice of the requirements for opposing a

26  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for

27  summary judgment.  ECF No. 35-8; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir.

28  ///

1988) (pro se prisoners must be provided with notice of the requirements for summary judgment);

<u>Rand v. Rowland</u>, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

IV.    <u>Undisputed Material Facts</u>

At all times relevant to the complaint, plaintiff was an inmate incarcerated at Mule Creek State Prison (MCSP) and defendant was employed at MCSP as a physician.  Defendant's Undisputed Statement of Facts (DSUF) (ECF No. 35-2) ¶¶ 1, 3; Response to DSUF (ECF No. 45 at 39-59) ¶ 1.[1]  From approximately July 2019 to July 16, 2021, defendant was one of plaintiff's physicians who treated his complaints of chronic right knee pain.  DSUF ¶ 4; Response to DSUF ¶ 4.

In 2001, prior to his incarceration at MCSP, plaintiff sustained a gunshot wound to his right lower knee and underwent several surgeries to repair the damage, including a muscle graft and hardware placement in 2003.  DSUF ¶ 5; Response to DSUF ¶ 5.  As a result, he experienced right lower extremity neuropathy.  <u>Id.</u>

On March 18, 2021, plaintiff submitted a health care request form requesting medical care for his knee, stating "my right knee is swollen, and hurting all day & night."[2]  DSUF ¶ 6; ECF No. 35-4 at 187.  The following day, defendant received the request form and ordered an initial visit with a registered nurse to examine plaintiff on March 22, 2021.  DSUF ¶ 7.  On March 22, 2021, plaintiff was examined by nurse Delina in relation to his complaint of right knee pain and swelling.  DSUF ¶ 8; Response to DSUF ¶ 8.  During this visit he complained of associated shooting pain on the right side of his leg and indicated that Tylenol 600 mg was not helping.  <u>Id.</u> The same day, the attending physician, Dr. Rudas, ordered a medical follow-up and naproxen 500 mg to address plaintiff's complaints of right knee pain.  DSUF ¶ 9.

---

[1]  Statements of fact to which plaintiff responded "I don't know" or "Unable to verify" are deemed undisputed.  <u>See</u> Response to DSUF ¶¶ 2-3, 7, 9, 24, 37-39, 42, 50-53, 57, 59, 64.
[2]  Plaintiff disputes DSUF ¶ 6 on the ground that he believes he *first* complained about his knee on March 3, 2021.  Response to DSUF ¶ 6.  However, he does not dispute that he submitted a healthcare request on March 18, 2021, and that portion of DSUF ¶ 6 is deemed undisputed.  Moreover, any dispute over whether plaintiff first complained on March 3 or March 18, 2021, is ultimately immaterial as there is no evidence or allegation that defendant was aware of plaintiff's complaints until he received the healthcare request on March 19, 2021.

On March 30, 2021, plaintiff submitted another healthcare request form requesting an appointment for his swollen right knee.[3]  DSUF ¶ 10.  The request stated "Can you see me ASAP, my right knee is swollen and is seriously hurting me.  I have nerve damage and it's killing me right now.  It's stopping me from sleeping at night."[4]  ECF No. 35-4 at 184.[5]  Defendant received the request the following day and ordered an examination for April 1, 2021.[6]  DSUF ¶ 11.

On April 1, 2021, nurse Delina examined plaintiff and submitted a correspondence to defendant.[7]  DSUF ¶ 12.  The correspondence stated the following:

> Seen IP today.  IP reports with Existing right knee pain with mild swelling noted and affecting his sleep due to aching throbbing pain and sharp shooting pain on right lower leg per IP.
>
> IP with h/o being shot on the right knee in the past and underwent major surgery on right knee.
>
> Per IP Naproxen and Capsaicin not working and makes only his stomach upset with naproxen.  IP is requesting nerve pain medication to alleviate his pain on the right lower leg.
>
> Last XR of right knee was on 07/12/2019 with Osteopenia.
>
> IP is requesting meds to help with the pain.  IP mentioned he was prescribed with Neurontin last 2018-2019 and would like to resume the Neurontin for his nerve pain.
>
> Please consider IP's request if indicated.

---

[3]  Plaintiff indicates some disagreement with DSUF ¶ 10 but does not specify what portion he disagrees with.  Response to DSUF ¶ 10.  He then cites to paragraph 2 of his declaration, which affirms he submitted a request on March 30, 2021, and quotes the language of the request.  ECF No. 45 at 33.  His disagreement therefore appears to be the failure to include the specifics of his complaint and DSUF ¶ 10 is deemed undisputed.

[4]  Minor grammatical and spelling errors may be corrected without notation when quoting plaintiff's records.

[5]  Where plaintiff disagrees with statements as inaccurately portraying the contents of documents but does not challenge the accuracy of the documents themselves, the court will look to the documents directly in determining their content.

[6]  Plaintiff states that he is unable to verify when defendant received the request and that he was not seen by defendant on April 1, 2021.  Response to DSUF ¶ 11.  However, DSUF ¶ 11 does not state that plaintiff was seen by defendant on that date and DSUF ¶ 11 is therefore deemed undisputed.

[7]  Plaintiff indicates he disagrees with DSUF ¶ 12 and cites the April 1, 2021 correspondence.  Response to DSUF ¶ 12.  He appears to dispute defendant's summary of the correspondence, not that the correspondence was sent.  DSUF ¶ 12 is therefore deemed undisputed.

ECF No. 35-4 at 1176.  The next day, defendant sent a correspondence to plaintiff confirming that he would receive a ducat for a medical appointment to address his complaints concerning his right knee.  DSUF ¶ 13; Response to DSUF ¶ 13.

On April 5, 2021, plaintiff was examined by defendant regarding his right knee.  DSUF ¶ 14.  Defendant states that plaintiff's chief complaint was that he twisted his knee during his sleep the previous night but felt slightly better on the day of the exam and he denied that the pain was interfering with his daily activities and work.  DSUF ¶¶ 14-15.  Plaintiff denies saying he twisted his knee or that his knee felt slightly better.  PL's Decl. ¶ 4 (ECF No. 45 at 34).[8]  He further states that he was limping at this time and the pain in his knee was affecting his sleep.  PL's Decl. ¶¶ 4-5 (ECF No. 45 at 34)).  During the exam, defendant noted that plaintiff had no erythema (redness) or edema (swelling), which can be signs of infection, and that plaintiff was fully ambulatory with normal balance and gait.  DSUF ¶ 16.  Plaintiff asserts that the nurse noted he had mild swelling on April 1, 2021, and that the welling was consistent throughout and continued to increase.  PL's Decl. ¶ 6 (ECF No. 45 at 34).  Defendant assessed that plaintiff suffered from an acute pain in his right knee and discussed the CDC guidelines for prescribing opioids for chronic pain; that there was no medical indication for gabapentin, Lyrica, tramadol, or other narcotics; and that the potential harmful side effects of those medications outweighed the potential benefit.  DSUF ¶¶ 17-18; Response to DUSF ¶¶ 17-18.  Defendant offered plaintiff Tylenol with codeine as needed for pain, counseled plaintiff on a home exercise program for stretching exercises and activities as tolerated to assist with his knee pain, and ordered an x-ray to assess plaintiff's right knee pain.  DSUF ¶¶ 18-19, 21; Response to DSUF ¶ 18-19, 21.

On April 16, 2021, plaintiff underwent 3-view x-rays of his right knee, which were compared to prior imaging from July 12, 2019.  DSUF ¶ 22.  The x-ray findings showed a stable exam of plaintiff's right knee.[9]  Id.; ECF No. 35-4 at 2.

---

[8]  Where plaintiff disputes a statement of fact by incorporating his declaration, the court will cite directly to the declaration.

[9]  Plaintiff states that he is "[n]ot able to agree on findings."  Response to DSUF ¶ 22.  However, plaintiff has not established that he is qualified to offer an opinion as to the x-ray findings, and DSUF ¶ 22 is deemed admitted.

1    On April 19, 2021, plaintiff submitted two healthcare requests, one stated "Naproxen

2    making me vomit and causing my stomach to hurt," while the other stated "still have extreme

3    pain in my right knee need meds badly." DSUF ¶ 23; Response to DSUF ¶ 23; ECF No. 35-4 at

4    640, 643. Defendant received the forms the following day and ordered a medical visit to address

5    plaintiff's right knee pain. DSUF ¶ 24.

6    Plaintiff was seen by the attending physician, Dr. Matharu, on April 21, 2021, who noted

7    
8    
9    
10   
> Patient seen and briefly examined. Endorsing chronic radicular pain
> without associated bowel/bladder incontinence or saddle anesthesia.
> Symptoms partially mitigated with tylenol and NSAID with topical
> analgesic. PE with reassuring vitals and unremarkable MSK exam.
> Will augment current therapy with lidocaine patch. Patient advised
> to place a 7362 should symptoms or concerns arise prior to next
> scheduled visit.

11   DSUF ¶¶ 25-27; ECF No. 35-4 at 1173. Plaintiff asserts that he consistently stated that his pain

12   was not relieved with Tylenol, NSAIDs, or capsaicin cream. PL's Decl. ¶ 8 (ECF No. 45 at 34).

13   On April 27, 2021, plaintiff submitted a healthcare request that stated, "Need to be seen

14   for my right knee, I heard it pop and now I can't put weight on my leg." ECF No. 35-4 at 638.

15   Defendant received the request the same day and ordered an x-ray and CT scans of plaintiff's

16   right knee at an offsite location the following day. DSUF ¶ 29; Response to DSUF ¶ 29.

17   On April 28, 2021, plaintiff was seen by nurse Delina during an urgent care visit and the

18   nurse reported to defendant that plaintiff was unable to stand and put weight on his right knee, the

19   affected side was warm to the touch with erythema and tenderness, and none of the pain

20   management medications assisted plaintiff with the throbbing pain. DSUF ¶¶ 30; Response to

21   DSUF ¶ 30. After speaking with nurses Delina and Shelly and examining plaintiff's knee

22   himself, defendant ordered an emergency/urgent care transfer because he determined that plaintiff

23   would need advanced CT imaging to assess the pain and swelling in plaintiff's right knee. DSUF

24   ¶ 31; Response to ¶ 31. The same day, plaintiff was taken to Sutter Amador Hospital where he

25   underwent both x-rays and CT scans of his right knee where he was diagnosed with cellulitis and

26   given antibiotics; Ceftriaxone in the emergency room and an order to start Keflex. DSUF ¶¶ 32-

27   33; Response to DSUF ¶¶ 32-33. The MCSP attending physician, Dr. Smith, ordered Keflex to

28   treat plaintiff's cellulitis and acetaminophen, as needed, for pain. DSUF ¶ 34; Response to DSUF

8

1    ¶ 34.  A durable medical equipment order was also placed for crutches for plaintiff to use through

2    May 6, 2021.  DSUF ¶ 35.

3         On April 30, 2021, defendant examined plaintiff upon his return to MCSP to address his

4    complaints of right knee pain and go over the treatment plan for his cellulitis.  DSUF ¶ 36;

5    Response to DSUF ¶ 36.  Defendant conducted a physical examination and noted that plaintiff's

6    right knee had limited range of motion and was warm, tender, and swollen with well-healed

7    scarring evidence of muscle flap due to a prior knee reconstruction.  DSUF ¶ 37.  Plaintiff's knee

8    injury appeared consistent with the diagnosis of cellulitis and defendant reviewed the discharge

9    summary with plaintiff regarding the cellulitis diagnosis and instructed him to continue with

10   Keflex.  DSUF ¶ 38.  Defendant also noted that plaintiff should continue with Tylenol 3 as

11   needed for knee pain and ordered a follow-up visit with the orthopedic specialist within a week,

12   as recommended by Sutter.  DSUF ¶ 39.  He also ordered a high priority orthopedic surgery

13   evaluation and orthopedic follow-up to address plaintiff's right knee cellulitis.[10]  DSUF ¶ 40.

14        On May 2, 2021, plaintiff submitted a healthcare request that stated "knee getting worse, I

15   now have an abscess leaking and my right knee is more swollen.  Antibiotics not working nor are

16   the pain pills.  I am really suffering, I think infection is spreading throughout my right leg."  ECF

17   No. 35-4 at 633.  Defendant received the request the following day and ordered plaintiff to be sent

18   to the Treatment and Triage Area (TTA) for immediate medical attention.  DUSF ¶ 42.  At the

19   TTA, defendant evaluated plaintiff and determined that his knee was worsening with increased

20   warmth and draining with serosanguinous fluid.  DSUF ¶ 43; Response to DSUF ¶ 43.  He

21   assessed that the antibiotics were not working and ordered plaintiff to be sent for emergency care

22   and treatment at San Joaquin General Hospital.  Id.  Plaintiff was admitted to the hospital the

23   same day, where he was diagnosed with chronic osteomyelitis (a bone infection) of the right knee.

24   DSUF ¶ 44; Response to DSUF ¶ 44.

25   ///

26
27
28

[10]  Plaintiff disputes DUSF ¶ 40 on the ground that he believes that staff at an outside hospital recommended surgery.  PL's Decl. ¶ 10 (ECF No. 45 at 35).  However, DSUF ¶ 40 does not state that defendant recommended surgery, and plaintiff raises no other disputes.  DSUF ¶ 40 is therefore deemed admitted.

On May 4, 2021, plaintiff underwent irrigation and debridement of the right leg with placement of an antibiotic rod to treat the chronic osteomyelitis. DSUF ¶ 45; Response to DSUF ¶ 45. Plaintiff remained at the hospital until May 11, 2021, and upon his discharge the orthopedic specialist recommended he undergo at least six weeks of IV antibiotic therapy and two to three months of the antibiotics Doxycycline and Ancef (also known as Cefazolin) to treat the osteomyelitis. DSUF ¶ 46; Response to DSUF ¶ 46.

On May 12, 2021, plaintiff was transferred to California Medical Facility (CMF) for treatment, and he underwent six weeks of IV antibiotic treatment, physical therapy, follow-up visits, and treatment by CMF staff. DSUF ¶¶ 47-48; Response to DSUF ¶¶ 47-48.

On June 16, 2021, plaintiff had a follow-up visit with his orthopedic surgeon at San Joaquin General Hospital and the orthopedic surgeon, Dr. Dowbak, reported resolving osteomyelitis of plaintiff's right tibia. DUSF ¶ 49; Response to DSUF ¶ 49.

On July 2, 2021, plaintiff was discharged from CMF and returned to MCSP. DSUF ¶¶ 48, 50-51. Plaintiff's discharge report noted that plaintiff's right knee was healed and there was no sign of infection. DSUF ¶ 50. Upon plaintiff's return to MCSP, defendant ordered a follow-up medical examination to check on the healing of plaintiff's post-surgery right knee. DSUF ¶ 51.

On July 5, 2021, MCSP physician Dr. Weiss placed an order for an x-ray of plaintiff's right knee to follow up on its healing. DSUF ¶ 52. On July 7, 2021, an order was placed for a permanent knee brace, cane, and foot orthotics to help plaintiff ambulate and the order included a note indicating that plaintiff claimed his crutches and walker were taken away by custody staff when he transferred to the Facility A yard. DSUF ¶¶ 53-54; Response to DSUF ¶ 54. The same day, plaintiff underwent a 3-view x-ray of his right knee, which was compared to the previous x-ray imaging taken on April 16, 2021, and found chronic osteomyelitis. DUSF ¶ 55; Response to DSUF ¶ 55.

On July 8, 2021, plaintiff submitted a healthcare request complaining of right knee and foot pain and indicating that he struggled walking and standing for extended amounts of time and requested the return of the walker. DSUF ¶ 56; Response to DSUF ¶ 56. On July 12, 2021, defendant placed an order for plaintiff to be medically examined the following day. DSUF ¶ 57.

On July 13, 2021, plaintiff was seen by Dr. Weiss, at which time plaintiff requested a walker.  DSUF ¶ 58; Response to DSUF ¶ 58.  Dr. Weiss reported that plaintiff had normal gait without the use of any ambulatory assistive devices and referred to the orthopedic surgeon's report which advised plaintiff to discontinue the use of crutches.  DSUF ¶ 59.  He also noted no tenderness to palpitation on the joint line of plaintiff's right knee and advised plaintiff that a walker was not medically indicated and encouraged plaintiff to walk after one lap to gradually increase strength and endurance of the knee.  DSUF ¶¶ 60-61; Response to DSUF ¶¶ 60-61.

On July 15, 2021, plaintiff submitted a healthcare request in which he indicated he was having trouble going up and down the stairs and from his bunk and requested a lower tier, lower bunk.  DSUF ¶ 62; Response to DSUF ¶ 62.  The following day, defendant ordered a medical follow up, scheduled for July 22, 2021, to address plaintiff's complaints concerning his right knee and to address his request for a lower tier and lower bunk.  DSUF ¶ 63.  This was the last time defendant provided treatment for plaintiff's right knee.[11]  Id.

On July 22, 2021, Dr. Weiss examined plaintiff during a follow-up visit and reported that plaintiff's osteomyelitis of the right knee region apparently cleared.  DSUF ¶ 64.  He further noted that plaintiff had temporary crutches and a walker, as well as a permanent cane, foot orthotics, and a knee brace and was prescribed 500 mg of naproxen to manage the pain.  DSUF ¶ 65.  Plaintiff continued seeing other providers regarding his knee through December 1, 2022, at which time the doctor reported that plaintiff walked normally, was able to sit on and get down from the exam table without any assistance or difficulty, was not using any assistive devices, and had no sign of infection.[12]  DSUF ¶¶ 66-72; Responses to DSUF ¶¶ 66-72.

[11]  Plaintiff disputes DSUF ¶ 63 stating that on information and belief defendant canceled his lower bunk chrono and took his vest and cane.  PL's Decl. ¶ 12 (ECF No. 45 at 35).  However, plaintiff provides no evidence or foundation to support this statement, and statements made on information and belief are "entitled to no weight because the declarant [does] not have personal knowledge."  Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1412 (9th Cir. 1995) (citations omitted); State of Washington v. Maricopa County, 143 F.2d 871, 872 (9th Cir. 1944) (statements in affidavit made on information and belief "should have been disregarded"); Fed. R. Civ. P. 56 (c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge.").  DSUF ¶ 63 is therefore undisputed.
[12]  To the extent plaintiff disputes any representations as to whether he was complaining of pain, had his cane, or was limping prior to December 1, 2022, the disputes are immaterial because there

1    V.    Discussion

2            A.    Deliberate Indifference

3                    i.    Legal Standard

4        "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

5    must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091,

6    1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires plaintiff

7    to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition

8    could result in further significant injury or the unnecessary and wanton infliction of pain,'" and

9    (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal

10    quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

11    A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to

12    respond to a prisoner's pain or possible medical need and (b) harm caused by the

13    indifference." Id. (citing McGuckin, 974 F.2d at 1060).

14            A difference of opinion between an inmate and prison medical personnel—or between

15    medical professionals—regarding the appropriate course of treatment does not by itself amount to

16    deliberate indifference to serious medical needs.  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th

17    Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  To establish that a difference of

18    opinion rises to the level of deliberate indifference, plaintiff "must show that the chosen course of

19    treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious

20    disregard of an excessive risk to [the prisoner's] health.'" Toguchi, 391 F.3d at 1058 (alteration

21    in original) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

22                    ii.    Analysis

23            Defendant argues that the record shows he responded promptly to plaintiff's complaints

24    and provided appropriate treatment, including pain medication.  ECF No. 35-1 at 16-20.  He

25    further asserts that he did not accuse plaintiff of faking his medical condition, threaten to take

26    away plaintiff's assistive devices, deny plaintiff treatment, or take away his pain medication.  Id.

27    _____

28    is no indication defendant was involved in this treatment.

1    at 18-19.  Defendant has also submitted the declaration of Dr. Atkin, a board-certified orthopedic

2    surgeon, and incorporated that declaration into his statement of facts.  DSUF ¶¶ 80-101.  Dr.

3    Atkin opined that it is often difficult for medical providers to distinguish between injury and

4    infection, and that the medical treatment plaintiff received, including the pain medications he was

5    prescribed, was appropriate and met the appropriate community standard of care for best medical

6    practices.  DSUF ¶¶ 87, 100-101.

7          In opposition to the motion, plaintiff argues that defendant failed to treat him and was

8    instead focused on blaming plaintiff's condition on his weight and denying him pain medication

9    because defendant was convinced that plaintiff was drug seeking.  ECF No. 45 at 1-2, 5-6, 9-10.

10    He further asserts that defendant included false statements in the medical records when he said

11    plaintiff reported twisting his knee and disputes Dr. Atkin's opinion as to the appropriateness of

12    the care he received.  Id. at 3-4, 10-12.  He argues that defendant should have taken immediate

13    steps to rule out an infection and that the course of treatment provided was medically

14    unacceptable.  Id. at 12.

15          Even if the court assumes that defendant accused plaintiff of faking his condition and

16    exhibiting drug-seeking behavior, as plaintiff alleges, those statements alone do not establish that

17    he was deliberately indifferent to plaintiff's serious medical need.  Though plaintiff was largely

18    seen and treated by other medical providers, the record establishes that defendant provided

19    treatment and did not ignore plaintiff's condition whenever he was responsible for plaintiff's care.

20          The undisputed evidence shows that each time defendant received a healthcare request

21    from plaintiff, he promptly ordered an appointment.  Defendant also ordered diagnostic tests,

22    prescribed pain medication, sent plaintiff out for emergency treatment, and submitted a referral

23    for a surgical evaluation.  Although plaintiff alleges that defendant denied him pain medication,

24    the record is clear that plaintiff was provided a variety of pain medications by defendant and other

25    medical providers at all relevant times.  That plaintiff believed other pain medication was more

26    appropriate does not make defendant's choice of pain medication medically unacceptable.

27    Plaintiff has not established that he is qualified to opine as to proper pain management,

28    ///

1   particularly for an individual with a known history of substance abuse,[13] and the Constitution

2   does not entitle him to the medication of his choice or to dictate what medications he is

3   prescribed.  See Stiltner v. Rhay, 371 F.2d 420, 421 n.3 (9th Cir. 1967) ("[P]laintiff's allegations

4   show only that he has not been receiving the kind and quality of medical treatment he believes is

5   indicated.  Like the Seventh Circuit, 'we know of no authority standing for the proposition that

6   such a claim as plaintiff attempts to assert here is cognizable under the Federal Civil Rights Act.'"

7   (quoting United States ex rel. Lawrence v. Ragen, 323 F.2d 410, 412 (7th Cir. 1963))).

8       With respect to plaintiff's allegations that defendant blamed his condition on an injury or

9   his weight and should have immediately taken steps to rule out infection, he has demonstrated

10  negligent misdiagnosis at best, which is not deliberate indifference.  See Wilhelm v. Rotman, 680

11  F.3d 1113, 1123 (9th Cir. 2012) (negligent misdiagnosis does not establish deliberate

12  indifference).  Plaintiff's attempts to dispute Dr. Atkin's opinion that the care he received was

13  appropriate is similarly unavailing since plaintiff's unqualified opinions as to his condition,

14  diagnosis, and suggested treatment do not create a dispute of a material fact.  See Toguchi, 391

15  F.3d at 1058 (difference of opinion between inmate and prison medical personnel—or between

16  medical professionals—regarding appropriate course of treatment does not by itself amount to

17  deliberate indifference).

18      Finally, though plaintiff alleges that defendant cancelled his lower bunk chrono and took

19  his vest[14] and cane, this assertion is not supported by any evidence.  Instead, plaintiff's assertion

20  that defendant cancelled these accommodations is based on information and belief.  ECF No. 45

21  at 35.  As such, these statements are "entitled to no weight because the declarant [does] not have

22  personal knowledge." Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1412 (9th Cir. 1995) (citations

23  

24  ---

[13]  The records from defendant's examinations of plaintiff clearly indicate that plaintiff had a
significant history of severe substance abuse, including amphetamines and cocaine (ECF No. 35-
25  4 at 1170-71, 1173-74), and plaintiff has admitted that a record indicates he admitted to ongoing
use of illicit drugs, including heroin (DSUF ¶ 77; Response to DSUF ¶ 77).  The record, dated
26  August 9, 2021, indicated plaintiff had ingested suboxone that day, ingested methamphetamine
two weeks prior, ingested morphine a month prior, snorted heroin two to three months prior, and
27  detailed other, regular use of illicit substances.  ECF No. 35-4 at 1752-53.
[14]  Though plaintiff does not elaborate, it appears he may be referring to a vest that marked him as
28  having impaired mobility.

omitted); <u>State of Washington v. Maricopa County</u>, 143 F.2d 871, 872 (9th Cir. 1944) (statements in affidavit made on information and belief "should have been disregarded"); Fed. R. Civ. P. 56 (c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge.").

For all these reasons, the court finds that there are no disputes of material fact and defendant was not deliberately indifferent to plaintiff's serious medical need. Summary judgment in favor of defendant is therefore appropriate.

**B.    Qualified Immunity**

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (citations omitted). In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), <u>overruled in part by</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009) (overruling <u>Saucier's</u> requirement that the two prongs be decided sequentially). Since the facts taken in the light most favorable to plaintiff do not show the violation of a constitutional right, it is not necessary for the court to address defendant's qualified immunity argument and the court declines to do so.

**VI.    Conclusion**

For the reasons set forth above, the undersigned finds that undisputed evidence establishes that defendant was not deliberately indifferent to plaintiff's serious medical need, and defendant's motion for summary judgment will be granted.

**VII.    Plain Language Summary of this Order for a Pro Se Litigant**

The undisputed evidence shows that defendant was not deliberately indifferent to your medical needs. Although your medical records showed that you did suffer from a serious medical condition, there was no evidence that defendant's treatment was medically unacceptable.

15

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendant's motion for summary judgment (ECF No. 35) is GRANTED;

2.  Judgment is entered for defendant; and

3.  The Clerk of the Court is directed to close this case.

DATED:  March 31, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE